(699 P.2d 560)

No. 56,324

JOHN B. HERMES, *Plaintiff,* and JOHN BACK, *Plaintiff-Appellant,* v. FRED STACKLEY, JR., CHESTER DOORNBOS, HARRIET HULL, KENNETH AUTRY and IMA JEAN AUTRY, *Appellees.*

Opinion filed May 2, 1985.

*Robert D. Myers,* of Newton, for appellant.

*Tim Connell,* of Connell & Connell, of El Dorado, for appellees.

Before ABBOTT, P.J., PARKS and MEYER, JJ.

ABBOTT, J.: The plaintiffs, John B. Hermes and John Back, initiated this action in replevin to recover cattle. The defendants counterclaimed for pasture rent and care of cattle, and Fred Stackley, Jr., also counterclaimed for past-due wages and miscellaneous items he claimed to be due pursuant to a contract of employment. The plaintiffs posted a replevin bond and obtained

possession of the cattle. The trial court granted judgment to defendants on their counterclaim and the plaintiff John Back appeals. The record indicates that plaintiff John B. Hermes was declared a bankrupt and he is not a party to this appeal.

Fred Stackley, Jr., was employed by Hermes under a written employment agreement. Stackley was to obtain pasture leases for cattle owned by Hermes and, among other employment duties, take care of the cattle. Stackley obtained three leases in Butler County for that purpose in 1982 (the Doornbos lease, the Autry and Hull lease, and the Schmidt lease). Hermes did not make the lease payments on the leases, and when he told Stackley he was going to remove the cattle from the rented pastures, Stackley told him he could not do so until the pasture rent was paid to the owners. Stackley then, with the permission of the pasture owners, removed the cattle to his mother's farm on November 19, 1982. Stackley and the landowners filed lien statements for pasture rental and for the care and custody of the cattle.

Hermes paid the rent on the Schmidt lease before this action was commenced and the Schmidts are not parties herein. Stackley included a claim for care provided the cattle on the Schmidt lease and his judgment is in part for that claim.

Neither Hermes nor Back testified at trial. None of the witnesses were acquainted with Back and they were unaware he claimed an interest in the cattle until this replevin action was filed. Back claimed an interest in the cattle in the replevin petition and executed the replevin bond. The only evidence presented at trial was on the counterclaim. Hermes and Back presented no evidence.

The trial court denied the plaintiffs' replevin petition and entered judgment for the defendants on their counterclaim against both Hermes and Back. The judgment for Doornbos was in the amount of $1,900; for the Autrys and Hull, $1,203.75; and for Stackley, $3,443.

Back appeals, claiming there is insufficient evidence to support the judgment against him and that the trial court erred in finding the defendants' lien valid.

The judgments in favor of Doornbos and the Autrys and Hull were based upon findings that their liens were valid and they were entitled to recover the amounts alleged in those liens. As will be discussed later, the defendants held agisters' liens pur-

suant to K.S.A. 58-220, which grants a primary lien to owners to secure the payment of rent for pasture land which is leased or rented out exclusively for pasture purposes.

There was no evidence whatsoever that Back was involved in the contractual arrangements under which the leases were obtained. The testimony of Stackley and Kenneth Autry reveals that the defendants had no knowledge of Back's interest in the cattle. That fact is of no comfort to Back because the agisters' liens gave the pasture owners a lien upon the livestock. Back admitted a proprietary interest in the cattle; indeed, such an interest was necessary for him to maintain a replevin action. Back posted a replevin bond pursuant to K.S.A. 60-1005(b) to regain possession of the cattle during the pendency of this action.

Back argues that if there had been no replevin bond, there would have been no basis to support the judgment against him. Our reply is that if there had been no replevin bond, the cattle would have remained in the possession of the defendants. The defendants could then have sold the cattle and used the proceeds to satisfy their liens. Having executed the bond as principal, Back was liable for any judgment in favor of the defendants. See *Kendall v. Black*, 99 Kan. 101, 160 Pac. 1015 (1916). See generally *Prather v. Johnson*, 168 Kan. 149, 211 P.2d 98 (1949). The real question before us is whether the defendants' liens were valid.

A similar analysis applies to Stackley's lien, which was based upon care given the cattle and thus arose under K.S.A. 58-207. A lien granted under that statute is upon the livestock. Back's claim of ownership of the cattle would be sufficient to support the judgment for Stackley if Stackley's lien were valid.

At common law there was no agister's lien for the care and pasturing of cattle. See *Kelsey v. Layne*, 28 Kan. * 218, * 222 (1882). Since the liens created by 58-207 and 58-220 are statutory in nature, their validity depends upon the terms of the statute. See generally *Clark Lumber Co. v. Passig*, 184 Kan. 667, 673, 339 P.2d 280 (1959). Back asserts numerous defects in the liens in issue.

K.S.A. 58-220, which provides an agister's lien to a pasture owner who leases his property for pasture purposes, has been in effect since 1937. The statute states:

"Any owner of pasture lands, or the trustee or agent of such owner, who shall

lease or rent such pasture lands exclusively for pasture purposes to any person, copartnership or corporation for the pasturing of cattle, horses, sheep or other livestock shall have a first and prior lien upon all of such livestock or so much thereof as may be necessary to secure the payment of the rent for said pasture land, only, and said lien shall be preferred to that of any prior security interest or other encumbrance and shall be valid irrespective of possession by the owner of such lands, or the owner's trustee or agent: *Provided,* The lessor record a duly verified notice of his or her claim to a lien upon such livestock in the office of the register of deeds in the county where such livestock is pastured prior to the expiration of fifteen (15) days after such livestock is removed from the pasture."

"If the contract price be not paid when the same is due and payable, the said livestock, or so much thereof as may be necessary to pay said lien and the expenses of sale, may be sold at public sale in the county where the lien arose, after giving ten days' written notice to the owner, trustee or agent by registered mail at his or her last-known address, and by publishing notice of said sale once in a newspaper of general circulation in the county where said livestock may be located: *Provided further,* That foreclosure proceedings must be commenced on or before December thirty-first following the season for which such rent is owing."

Back claims the Doornbos lien is invalid because Doornbos did not lease land *exclusively* for pasture purposes and the foreclosure proceedings were not commenced by December 31, 1982.

The word "exclusively" was not contained in the original version of 58-220. Rather, it was added to the statute in a 1939 amendment. See L. 1939, ch. 229, § 1. According to Hannah, *The Legal Status of Tenant Farmers in Kansas,* 7 Kan. L. Rev. 295, 303 (1959), the word was added so that landlords would not have an additional lien upon the crops of tenant farmers who also owned livestock.

The lease agreement on the Doornbos land did not apportion the annual rent between the pasture and the farm land, but simply established a total rent of $2,400 for one year. The contract did, however, specifically provide that the lease was for 77 acres of cropland and 145 acres of pasture. Thus, in our opinion, the pasture lands were leased exclusively for pasture purposes. While there was not a "contract price" solely for the pasture rental, Stackley testified that the portion of the contract price attributable to the pasture land was based upon the average fee for pasture rental in the area and what that fee was. Plaintiffs presented no evidence to show that such calculations were unreasonable. Since the Doornbos lien simply sought to recover

the payment of the rent for said pasture only, the lien, in our opinion, was valid.

The last provision in 58-220 is that foreclosure proceedings must be commenced on or before December 31 following the season for which the rent is owed. Although Doornbos filed his lien on November 19, 1982, he did not file his counterclaim seeking to foreclose upon the lien until February 22, 1983. Consequently, Back alleges that the lien expired on December 31, 1982.

This argument is without merit as to the Doornbos lease if the phrase "the season for which such rent is owing" is construed to mean the period for which the pasture contract is in effect. The rent on the Doornbos lease was due December 1, 1982; however, the lease itself ran from March 1, 1982, until March 1, 1983. The parties may have intended that the lease continue until March 1 for farming rather than pasturing purposes, but plaintiffs presented no evidence to that effect. Although it is clear that the intent of the legislature is to require prompt action to foreclose an agister's lien, it is unrealistic here to require that foreclosure proceedings commence before the termination of the lease period, even though the rent may have been due. Since the Doornbos lease was still in effect on December 31, 1982, this court need not determine whether the foreclosure of Doornbos' lien was commenced in a timely fashion.

We hold that the Doornbos lien was valid and that the trial court did not err in granting Doornbos judgment for the amount alleged in that lien.

In addition to Back's claiming that the proceedings to foreclose the Autry/Hull lien were not timely commenced, he also claims that these parties could not obtain the benefit of an agister's lien under 58-220 because the owner of the pasture land did not enter into the lease agreement. On the one hand, Back argues that the Autrys, as lessees of Hull, were not the owners of the pasture lands; further, that they were not acting as agents or trustees for Hull because they subleased the pasture to Stackley for a profit (the Autrys leased the land from Hull for $800 a year, but charged Stackley $1,125 for a six-month period). On the other hand, Back argues that Hull was not a party to the lease agreement, therefore she is not a lessor entitled to the benefit of the lien.

Back's argument that these parties were not entitled to the benefit of a lien fails on the merits. As lessees, the Autrys stood

in the position of the owner of the pasture land for purposes of 58-220. "When land is leased to a tenant, the law of property regards the lease as equivalent to a sale of the premises for the term. The lessee acquires an estate in the land, and becomes for the time being the owner and occupier. . . ." *Borders v. Roseberry*, 216 Kan. 486, 488, 532 P.2d 1366 (1975). Thus, the Autrys were entitled to file a lien.

Hull may not have entered into the sublease agreement with Stackley; however, Kenneth Autry testified that he had an agreement with Hull under which he could pasture other people's cattle on the property. More importantly, the Autrys and Hull filed a joint lien statement, and judgment was entered jointly in their favor. Since the lien itself was valid, and there is no dispute as to how the judgment should be divided between the Autrys and Hull, the question becomes whether proceedings to foreclose their lien were timely commenced.

Unlike the Doornbos lease, the Autry lease did terminate in 1982 because the lease was in effect only until October 15, 1982. Although the Autry/Hull lien was filed November 30, 1982, their counterclaim was not filed until February 22, 1983.

In our opinion, the "foreclosure proceedings" referred to in the second proviso to 58-220 is not a court action. The proviso must be read in light of the clause it is qualifying, which simply provides that if the contract price is not paid when due, the livestock may be sold after giving the owner written notice and publishing notice of the sale. The statute makes no mention of a judicial proceeding. By way of comparison, K.S.A. 60-1105, which governs the foreclosure of mechanics' liens, does require court action for such a foreclosure. On the other hand, K.S.A. 84-9-504(3) uses the term "proceedings" in referring to the sale of collateral by a secured creditor following a default by a debtor.

The dispositive question is when such foreclosure proceedings were "commenced." K.S.A. 58-220 provides in pertinent part that "foreclosure proceedings must be commenced on or before December thirty-first following the season for which such rent is owing." Thus, the filing of the Autry/Hull counterclaim was too late to comply with the statutory requirement. According to Black's Law Dictionary 243 (5th ed. 1979), to "commence" means to initiate by performing the first act. K.S.A. 58-220 requires that the first act in a foreclosure proceeding is to give

ten days' written notice to the owner of the livestock by registered mail at his or her last-known address, and by publishing notice of the sale as set forth in the statute. The lien statement filed by the Autrys and Hull expressly informed Hermes (but not Back) that if the amount due was not paid within 30 days, the cattle would be sold at public auction. Stackley testified that copies of the liens were sent to Hermes.

In our opinion, the notice referred to in 58-220 is notice that a sale will, in fact, take place. To meet due process requirements, this would require notice of a date, time and place of sale. There is no evidence in the record that such notice was given to Hermes or Back. We conclude that notice of an actual, imminent sale is required to constitute the commencement of foreclosure proceedings under 58-220. Thus, the judgment in favor of the Autrys and Hull should be vacated, for their lien lost its force and effect when foreclosure was not commenced before December 31, 1982, following the pasture season. See generally *Boyce v. Knudson*, 219 Kan. 357, 362, 548 P.2d 712 (1976) (mechanic's lien lost when not timely foreclosed).

Stackley did not file a separate lien on his own behalf, but rather asserted a claim in each of the three pasture owners' liens for expenses incurred in caring for the cattle. It appears that the $3,443 judgment in favor of Stackley included a claim of $1,750 for unpaid wages and $1,693 for care of the cattle.

Stackley's lien presents a claim for care provided the cattle and is therefore based upon K.S.A. 58-207, which provides:

"The keepers of livery stables, and all others engaged in feeding horses, cattle, hogs, or other livestock, shall have a lien upon such property for the feed and care bestowed by them upon the same, and if reasonable or stipulated charges for such feed and care be not paid within sixty (60) days after the same becomes due, the property, or so much thereof as may be necessary to pay such charges and the expenses of publication and sale, may be sold as provided in this act: *Provided, however*, That any lien created by this act may be assigned."

Contrary to Back's assertion, Stackley's not being engaged as an independent contractor in the occupation of caring for cattle does not render his lien ineffective. See *Kelsey v. Layne*, 28 Kan. at * 222-25, wherein it was held that the care provided for a single animal was sufficient to establish a lien. More troublesome, however, is Stackley's possession of the cattle as an employee of Hermes. In *Loader v. Bank*, 113 Kan. 718, 216 Pac. 264 (1923), the court held that it is indispensable to the enforcement

of the lien that the lien claimant be a bailee in possession. It may be possible to distinguish *Loader* and the possession requirement set forth therein since that case, and many other early cases arising under 58-207, involved a pasture contract and would now fall under 58-220. However, the court in *Chasteen v. Childers,* 218 Kan. 519, 525, 546 P.2d 935 (1976), relied in part on the plaintiff's lack of possession of certain horses in holding that the plaintiff was not entitled to a lien under 58-207.

Back argues that because Stackley was Hermes' employee, Stackley's possession of the cattle was not his own but rather was the possession of Hermes. The general rule is that a servant for hire is not entitled to the benefit of a lien since a servant's possession is that of the master's. See 4 Am. Jur. 2d, Animals § 74; 3A C.J.S., Animals § 59 c; Annot., 107 A.L.R. 1072. See generally 1 Jones on Liens § 689 (3rd ed. rev. 1914). Given that Stackley was not a bailee in possession of the cattle, as required by *Loader*, he was not entitled to a lien under 58-207. Thus, the finding that his lien was valid is reversed and the judgment in his favor vacated, even though he provided care for cattle in which Back had a proprietary interest.

The unpaid wages portion of the judgment is vacated against Back, because he was not a party to the employment contract. That was strictly between Stackley and Hermes. The record is void of any evidence of a partnership or agency relationship between Back and Hermes and gives no indication of when or how Back acquired his interest in the cattle (or what interest he acquired). The case was tried on the theory of an employment contract and a lien, not on quantum meruit or other equitable theory.

The judgment in favor of Doornbos is affirmed. The judgment in favor of Stackley, the Autrys and Hull is reversed.

Affirmed in part and reversed in part.